**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO,
EASTERN DIVISION**

| | | |
|---|---|---|
| **Jennifer Kessinger** | : | Case No.: |
| **16686 State Route 28** | : | |
| **Chillicothe, Ohio 45601** | : | |
| | : | |
|     **Plaintiff** | : | Judge: |
| | : | |
|     -vs- | : | |
| | : | |
| **Ross County Sheriff Department** | : | **VERIFIED COMPLAINT FOR** |
| **28 North Paint Street** | : | **DAMAGES AND INJUNCTIVE** |
| **Chillicothe, Ohio 45601** | : | **RELIEF** |
| | : | |
| **City of Chillicothe** | : | |
| **35 South Paint Street** | : | |
| **Chillicothe, Ohio 45601** | : | **(Jury Demand Endorsed Herein)** |
| | : | |
| **and,** | : | |
| | : | |
| **Lieutenant Kevin S. Pierce** | : | |
| **28 North Paint Street** | : | |
| **Chillicothe, Ohio 45601** | : | |
| | : | |
|     **Defendants.** | : | |

**COMPLAINT**

**I.**    **INTRODUCTION**

1.    This action is a civil rights action brought by the Plaintiff against her employer for multiple acts of sexual harassment, retaliation, disparate treatment, sex discrimination and an action under the FMLA. Plaintiff notified her superiors of the sexual harassment and discrimination to which she was subjected. Plaintiff, at all times relevant herein, followed the proverbial chain of command. Instead of attempting to remedy the discrimination and harassment, the discrimination and harassment persisted, and became worse as Plaintiff's attempt to remedy the same resulted in retaliation. In addition to Plaintiff's claims under federal law, Plaintiff's action also includes claims under Ohio state statutory and common laws.

## II.   PARTIES AND JURISDICTION

2.   At all times relevant herein, Plaintiff, Jennifer Kessinger ("Plaintiff" and/or "Ms. Kessinger"), has resided in the County of Ross, State of Ohio.

3.   At all times relevant herein, Defendant, Ross County Sheriff Department, (hereinafter referred to as "RCSD") is an entity authorized to do business in the State of Ohio, including, but not limited to, engaging in actions as a support system for all public safety services that cover Ross County.

4.   RCSD employs four (4) or more employees with the State of Ohio, and therefore Defendant RCSD is an "employer" as defined by the Ohio Revised Code Section 4112.01(A)(2).

5.   At all times relevant herein, Defendant, City of Chillicothe ("Chillicothe"), is a municipality of the State of Ohio.

6.   Chillicothe employs four (4) or more employees with the State of Ohio, and therefore Defendant Chillicothe is an "employer" as defined by the Ohio Revised Code Section 4112.01(A)(2).

7.   Defendant Kevin Pierce is a Lieutenant for RCSD; he resides and/or is employed within the City of Chillicothe, Ohio.

8.   At all times relevant herein, Plaintiff was a member of a protected class on the basis of her sex/gender.

9.   This Court has jurisdiction over the claims under 28 U.S.C. § 1331 because the action arises under the laws of the United States and involves federal questions based, including, but not limited to, those related to the Equal Pay Act.  This Court also has pendent jurisdiction of state law claims pursuant to 28 U.S.C. § 1367.

10.   Jurisdiction is proper as the Causes of Actions are brought pursuant to the laws of the United States and/or utilize the same core of operative facts and is, therefore, subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11.    Venue lies in the Southern District of Ohio because the facts leading to the dispute between the parties occurred in Ross County, Ohio, within this District, and the Defendants are doing business in this District.

### III.  GENERAL ALLEGATIONS (STATEMENT OF FACTS)

12. On July 7, 2019 Mrs. Kessinger was working as a dispatcher at the Ross County Sheriff's Office located at 28 N. Paint Street, Chillicothe, Ohio 45601. Mrs. Kessinger was taking a break and walking her bag to her car in the back-parking lot when she observed a female subject trespassing on the property of the Law Complex and attempting to smuggle items into the jail to an inmate. Mrs. Kessinger is a certified law enforcement officer, and, thereby, has an inherent duty to act so as to prevent the crime the unnamed female was committing.

13. Due to Mrs. Kessinger being in dispatch on the night of July 7, 2019, and not working with the Road Patrol Division, Mrs. Kessinger contacted the on-duty shift sergeant which was Sergeant Lawhorn. Mrs. Kessinger explained the situation to Sergeant Lawhorn and he advised Plaintiff that he would need to make a phone call and that he would call Plaintiff back about the incident.

14. Sergeant Lawhorn contacted Mrs. Kessinger back a short time later and advised Plaintiff that he had spoken to Lt. Pierce and instructed that the female should not be charged for her actions at this time.

15. After getting off the phone with Sergeant Lawhorn, Mrs. Kessinger prepared to release the female suspect from being detained for investigative purposes.

16. At this time, Mrs. Kessinger was approached by Captain Preston with The Ross County Sheriff's Office, who is the head of the detective's division and is in charge of internal investigation.

17. Captain Preston advised Plaintiff to take the female suspect to jail on the night of July 7, 2019. Mrs. Kessinger did as she was instructed, and took the female suspect into custody without incident as she was instructed. Upon information and belief, Plaintiff states that Captain Preston has been subjected to harassment investigations in the past, although not pertaining to Plaintiff; however, he is still in charge of handling internal complaints/investigations.

18. During Mrs. Kessinger's next few working days subsequent to her shift on July 7, 2019, Lt. Pierce's actions made Mrs. Kessinger feel uncomfortable.  Specifically, Lt. Pierce made statements such as "you are not a deputy you're just a dispatcher".

19. Although Mrs. Kessinger had transferred to the communications division (dispatch), she was still considered a commissioned Deputy through the Ross County Sheriff's Office.

20. Within the next few days following the incident of July 7, 2019, Mrs. Kessinger was approached by Lt. Claypool, who is also employed with The Ross County Sheriff's Office. Lt. Claypool and Lt. Pierce share an office at the Law Complex. Mrs. Kessinger was approached by Lt. Claypool without Lt. Pierce being present, and Lt. Claypool made the statement "do not ever go behind another supervisors back like that again".

22. Lt. Claypool explained to Plaintiff that Lt. Pierce made the decision not to arrest the female subject and instead claimed that Mrs. Kessinger made the decision to go to Captain Preston for another opinion.

23. Mrs. Kessinger tried to explain how she was approached by Captain Preston and he instructed her to take the suspect into custody, and that she did not go behind another supervisors back; however, Lt. Claypool cut Plaintiff off before she could say anything further and stated "I'll clear things up between you and Pierce".

24. Subsequent to this conversation, Mrs. Kessinger was hoping to speak with Captain Preston and have him clear these issues with Lt. Pierce so this behavior would stop. Mrs. Kessinger felt that if she talked to Captain Preston and explained to him her situation, he would be able to tell Lt. Pierce the truth and advise him that she did not go behind his back and ask for a better solution for the underlying incident.

25. Lt. Pierce has made open statements in the past regarding his negative feelings toward Captain Preston, including that Captain Preston never actually worked the road as a commissioned law enforcement officer

26. Mrs. Kessinger believes that part of the hostility exhibited toward her was a direct result of Captain Preston giving Plaintiff an order over Lt. Pierce.

27. Mrs. Kessinger refrained from engaging in discussions with Captain Preston because she was fearful of further retaliation and she was hopeful that the situation would pass.

28. On July 25, 2019 Mrs. Kessinger was off duty while at the Law Complex in order to complete an evaluation form for an employee she previously trained in the communications division.

29. As Mrs. Kessinger walked into the office, she walked straight into what is called the "briefing deputies' room". All mailboxes for road patrol deputies and dispatchers employed with The Ross County Sheriff's Office are located in this room.

30. Mrs. Kessinger has been in the deputies' room several times prior to this specific incident to check her mailbox and to communicate with the law directors office and prosecutors office for pending court cases due to her time spent as a road patrol deputy in the road patrol division.

31. Upon her arrival into the deputies' room she observed Captain Mckeever sitting at the briefing table. Captain Mckeever stated to Mrs. Kessinger "do you know how I know you're in this building before I actually see you"? Mrs. Kessinger replied "how"? Captain Mckeever stated, "because your perfume, it smells good".

32. Right after that statement was made by Captain McKeever, Lt. Pierce exited his office located in the deputies' room and stated "it's her hoe juice". Lt. Pierce reiterated this statement several times, stating "hoe juice" over and over making Mrs. Kessinger feel uncomfortable due to the extreme derogatory connotation of this phase.

33. Lt. Pierce continued the harassment and retaliatory behavior by telling Mrs. Kessinger that she was not a deputy and only "just a dispatcher".

34. Lt. Pierce told Plaintiff several times to get out (of the deputies' room), as that she is merely a dispatcher and no longer a deputy.

35. Mrs. Kessinger sat down at the briefing table and remained there to fill out the evaluation form, and while completing it Lt. Pierce exited his office, and punched/struck her with his fist on her right shoulder.

36. As a result of the physical attack by Lt. Pierce, Mrs. Kessinger suffered damages. Further, Mrs. Kessinger was pregnant at the time of this assault. Lt. Pierce made a statement along the lines of "I hope that hurt" as he walked out of the room.

37. Subsequently, Mrs. Kessinger went to lunch with Andrea Mougey, an employee of The Ross County Sheriff's Office Deputy, who at the time was in charge of payroll for the Ross County Sheriff's Office Employees.

38. Mrs. Kessinger was upset due to the incident and told Andrea Mougey what had happened. Not only was Mrs. Kessinger harassed, retaliated against, targeted again, treated in a hostile nature, she was physically assaulted by a superior officer while pregnant.

39. On August 27, 2019, Mrs. Kessinger had lunch with Staff Sergeant Heather Crosier who is also employed with The Ross County Sheriff's Office to obtain insight as to how to cope with the issues she experienced with Lt. Pierce

40. Mrs. Kessinger chose to confide in Sergeant Crosier as Lt. Pierce was previously investigated for hostile work environment, as Lt. Pierce had openly referred to Sergeant Crosier as "the fridge" referring to her size or shape.

41. After speaking with Sergeant Crosier, Sergeant Crosier advised Plaintiff that she should speak with Captain Mike Preston about the incident.

42. Mrs. Kessinger reluctantly agreed to speak with Captain Mike Preston; however, she feared further retaliation.

43. Thereafter, Sergeant Crosier contacted Captain Preston and on August 27, 2019 Mrs. Kessinger spoke with Captain Preston while Plaintiff was off duty, and Mrs. Kessinger was not scheduled to return to work until Thursday.

44. On or about August 27, 2019, Mrs. Kessinger explained the situation to Captain Preston, and the conditions that she was experiencing in the workplace .

45. After explaining to Captain Preston her situation, Mrs. Kessinger requested that Captain Preston speak with Lt. Pierce to let him know the truth about how the timeline of events transpired on the night of July 7, 2019.

46. Mrs. Kessinger believed that if Captain Preston would tell Lt. Pierce that Plaintiff did not approach him on the night in question, that maybe Lt. Pierce would leave her alone and the harassment and retaliation may stop.

47. Captain Preston stated to Mrs. Kessinger that we were way past that, and he now had to speak with Chief Deputy Hollis, and Sheriff Lavender about the incident.

48. Mrs. Kessinger explained to Captain Preston that she had the incident documented, and he advised Plaintiff that he may need that in writing. Captain Preston advised Plaintiff that she would need to trust him, and to enjoy her days off. Captain Preston advised Plaintiff that he would talk with her on her next duty day, said date being Thursday, August 29, 2019.

49. Over the next few days Mrs. Kessinger tried to enjoy her days off, but continued to stress about what retaliation she may encounter when returning to work.

50. Upon Mrs. Kessinger returning to work the day of August 29, Captain Preston requested that she step out of dispatch into the hallway. Mrs. Kessinger stepped out and he asked if she had written down the incident that occurred on July 25, 2019. She advised him that she did, and that she would e-mail it to him.

51. Moments after that conversation, Mrs. Kessinger e-mailed Captain Preston the documentation she had for the incident of July 25, 2019. The e-mail was sent directly to Captain Preston on August 29, 2019 at 9:18 am.

52. After the e-mail was sent, Mrs. Kessinger was called in to Captain Preston's office. Upon arrival she met with Captain Preston and Deputy Emily Schmidt who is the sheriff's secretary.

53. Captain Preston explained he was going to have Emily present with him during the investigation on Lt. Pierce because he has been told he is "unapproachable".

54. Captain Preston then asked if Mrs. Kessinger wanted to press charges on Lt. Pierce for the physical assault. At this time, Mrs. Kessinger said no, but that she just wanted Lt. Pierce to not hit her again.

55. Mrs. Kessinger was told that Lt. Pierce did not know that she filed a complaint, and that he would not know until it was investigated. This made Mrs. Kessinger feel safe about the situation considering she expressed to Captain Preston her fear of further retaliation.

56. Mrs. Kessinger had explained to Captain Preston that she did not want to make it a sexual harassment issue because there were other people that currently works at the Sheriff's Office that have been going through the same things as her.

57. Mrs. Kessinger has witnessed first-hand other deputies getting hazed by the command staff at the Ross county sheriff's office; however, the circumstances surrounding Plaintiff were much different.

58. Captain Preston advised Plaintiff that he would need time to investigate the complaint. Captain Preston asked Mrs. Kessinger who else knew about the incident, and he was advised that Deputy Andrea Mougey had been informed about the same.

59. Captain Preston advised Mrs. Kessinger not to speak with anyone about the incident and also advised Deputy Mougey that she was not to speak of the incident.

60. At this point, Mrs. Kessinger assumed everyone involved was not to speak of the incident as Captain Preston issued a "gag order" with respect to the same.

61. On August 29, 2019, Mrs. Kessinger spoke with Captain Mckeever about the incident, as Captain Mckeever asked Plaintiff why she did not come to him about the incident, and whether he made Plaintiff feel uncomfortable.

62. Captain Mckeever then explained that he was asked if he complimented Plaintiff's perfume on the day of July 25, 2019, and he acknowledged the same to others in the chain of command. Captain Mckeever also advised Plaintiff that Lt. Pierce did not know about the incident. Plaintiff explained her concerns to Captain Mckeever and advised him that she went to Captain Preston over him hoping that he could talk to Lt. Pierce, and tell him the truth about what happened on the night of July 7, 2019. Captain Mckeever also advised Mrs. Kessinger that Lt. Pierce did not know the complaint was filed.

63. By the end of the day on August 29, 2019, Mrs. Kessinger felt as if Captain Mckeever and Captain Preston were taking the correct measures to ensure her safety, especially given the assurances that Lt. Pierce was unaware of the filing of the complaint.

64. From this point forward Mrs. Kessinger heard nothing from Captain Preston.

65. On August 30, 2019 Mrs. Kessinger was walking through the back-parking lot when she observed Captain Mckeever and Lt. Pierce exit a patrol cruiser together.

66. Captain Mckeever advised Plaintiff that he and Lt. Pierce had a meeting, and Mrs. Kessinger was called back to Captain Mckeever's Office.

67. As Mrs. Kessinger entered Captain Mckeever's Office, she was surprised to find Lt. Pierce in the room with Captain Mckeever. Captain Mckeever explained that he and Lt. Pierce had breakfast and he told Lt. Pierce about the complaint Mrs. Kessinger filed against him and they wanted to basically just clear things up.

68. Mrs. Kessinger felt emotional, stressed, and scared considering the events leading up to this day.

69. Plaintiff had filed a formal complaint, and now Lt. Pierce was aware of the same prior to any investigation or follow up on the matter.

70. At this moment Mrs. Kessinger realized that no one was on her side. Plaintiff was cornered and felt compelled to go along with the meeting.

71. While in the office, Lt. Pierce made a statement to Mrs. Kessinger along the lines of "I'm sorry I offended you, but I even tell the Sheriff, and Mr. Munch (a court deputy) that she is wearing hoe juice."  Mrs. Kessinger wanting to leave the office, but reluctantly agreed to continue the conversation.

72. Throughout the meeting, Lt. Pierce was standing up looking down at her making Mrs. Kessinger uncomfortable. She was aware as to what has happened to past employees who have tried to speak out about the hostile environment.

73. Captain Mckeever later that day told Mrs. Kessinger that he wanted it in writing that she was "okay". Mrs. Kessinger refused to put it in writing as she felt humiliated.

74. Mrs. Kessinger was forced to continue to work with Lt. Pierce, and Lt. Pierce now knew that she filed a complaint against him.

75. On August 30, 2019, Sheriff Lavender spoke with Mrs. Kessinger about the incident, but failed to elaborate on the "hoe juice" comment.

76. Sheriff Lavender did however reference her assault and referred to her allegation of the incident as a "generation issue".

77. Sheriff Lavender said something along the lines of "in the old days you could slug your coworkers." Mrs. Kessinger advised Sheriff Lavender that Lt. Pierce was not joking, and she reminded him that she was pregnant.

78. Sheriff Lavender also advised Plaintiff that he would personally investigate her complaint if that is what she wanted, and that he did not want her to feel like he was sweeping it under the rug. Mrs. Kessinger went on to advise him that she was "okay", as she realized after his statements that he was not on her side.

79. Plaintiff states that the chain of command essentially failed her at all junctures, and that Plaintiff feared for her health, safety and welfare as a result of the actions and/or inactions of Defendants, jointly and severally.

80. Thereafter, Plaintiff was constructively discharged from her employment.

81. On or about January 31, 2020, Plaintiff filed and/or caused to be filed that certain Charge of Discrimination jointly with the EEOC and the OCRC.

82. Subsequently, the EEOC issued that certain Dismissal and Notice of Rights ("Right to Sue Letter") dated October 22 2020.

## IV. CAUSES OF ACTION

### A. First Claim – Gender Discrimination

83. The preceding paragraphs are incorporated by reference as if fully restated herein.

84. This gender discrimination took the form of disparate treatment of Mrs. Kessinger when compared to similarly situated male employees, as well as the form of disparate impact discrimination.

85. The actions and/or inactions of Defendants, jointly and severally, as alleged herein constitutes discrimination against Mrs. Kessinger based upon her sex in violation of R.C. 4112.02(A) and/or applicable federal statutes, if any, with respect to the tenure, terms, conditions, privileges of employment, and other matters directly and/or indirectly related to her employment, by treating her differently than similarly-situated co-workers, and by other means to be determined at trial.

86. The aforementioned actions and/or inactions of Defendants, jointly and severally, was done maliciously and/or intentionally or with reckless disregard for the rights of Mrs. Kessinger.

87. The actions and/or inactions of Defendants, jointly and severally, as herein alleged constituted a conscientious disregard for the rights and/or safety of Mrs. Kessinger that had a great probability of causing, and did cause, substantial damage to her, thereby rendering Defendants liable for punitive damages.

88. The discriminatory conduct, actions and/or inactions of Defendants, jointly and severally, was motivated by Mrs. Kessinger gender.

89. The actions and/or inactions of Defendants, jointly and severally, created and perpetuated a hostile workplace environment of harassment, discrimination, and retaliation that a reasonable person would find to be hostile, intimidating, offensive and abusive.

90. Mrs. Kessinger was offended by the harassment, discrimination, and retaliation and, further, perceived the workplace environment created and perpetuated by Defendants to be hostile, intimidating, offensive and abusive.

91. The actions and/or inactions of Defendants, jointly and severally, created a hostile workplace environment of harassment and discrimination and altered the conditions of Mrs. Kessinger employment.

92. The actions and/or inactions of Defendants, jointly and severally, created a hostile workplace environment of harassment and discrimination interfered with Mrs. Kessinger work performance.

93. Ms. Kessinger and other employees and officers reported the hostile work environment to her supervisor(s) but no corrective action was taken.

94. As a direct and proximate result of their actions and/or inactions of Defendants, jointly and severally, Ms. Kessinger has been damaged in an amount exceeding Seventy-Five Thousand Dollars and 00/100ths ($75,000.00).

95. As a further direct and proximate result of the actions and/or inactions of Defendants, jointly and severally, Ms. Kessinger has incurred severe economic damages (including, but not limited to loss of income and other benefits), pain and suffering, humiliation, severe emotional distress, loss of employment, and the loss of enjoyment of life for which Ms. Kessinger asserts a claim against Defendants, jointly and severally, pursuant to applicable law and/or as authorized under R.C. 4112.99 in excess of Seventy-Five Thousand Dollars and 00/100ths ($75,000.00), which damages continue to accrue, for any and all emotional distress, loss of reputation, humiliation, embarrassment, loss of self-esteem, extreme frustration, sums of Back and Front Pay, and Compensatory and Punitive Damages, plus an award of reasonable attorneys' fees.

96. Each and every one of the actions and/or inactions of Defendants, jointly and severally, as complained of herein, was intentional, motivated by malice and ill will and/or done with reckless disregard of Ms. Kessinger's rights, thereby entitling her to recover punitive damages.

97. Plaintiff also seeks punitive damages against Defendants, jointly and severally, to the extent permitted by law.

**B. Second Claim – Intentional and/or Negligent Infliction of Emotional Distress**

98. The preceding paragraphs are incorporated by reference as if fully restated herein.

99. Defendants, jointly and severally, owed a duty to Mrs. Kessinger to refrain from intentional and/or negligent injury. The actions and/or inactions of Defendants, jointly and severally, as alleged herein, has resulted in and/or has continued to result in the intentional and/or negligent infliction of emotional distress to Mrs. Kessinger for which Defendants, jointly and severally, are liable.

100. Defendants, jointly and severally, have breached their duty to Ms. Kessinger based on their conduct, actions, and/or inactions as alleged herein, and Defendants' intentionally and proximately caused injury to Ms. Kessinger in the form of embarrassment, mental anguish, loss of reputation, loss of self-esteem, loss of employment, harm to Mrs. Kessinger relationship with her family, and other emotional distress resulting in physical injury in form of adverse health effects. Said injuries caused extreme pain and suffering in the past and will likely continue to cause pain and suffering in the future.

101. The actions and/or inactions of Defendants, jointly and severally, as alleged herein was and/or is outrageous and has proximately caused damage to Mrs. Kessinger arising from the intentional infliction of serious emotional distress upon her for which Ms. Kessinger is entitled to judgment and recovery under Ohio law against Defendants, jointly and severally.

102. The actions and/or inactions of Defendants, jointly and severally, as described herein was willful, malicious, spiteful, with ill will, and/or a reckless disregard for Mrs. Kessinger's legal rights.

103. As a direct and proximate result of the actions and/or inactions of Defendants, jointly and severally, Mrs. Kessinger has been damaged in an amount in excess of Seventy-Five Thousand Dollars and 00/100ths ($75,000.00).

104. Plaintiff also seeks punitive damages against Defendants, jointly and severally, to the extent permitted by law.

**C.     Third Claim – Retaliation**

105. The preceding paragraphs are incorporated by reference as if fully restated herein.

106. Mrs. Kessinger engaged in protected activity, by reporting the hostile work environment and discrimination by Defendants, and by providing requested information regarding her supervisor.

107. As a result of the actions and/or inactions of Defendants, jointly and severally, the Mrs. Kessinger has suffered damages, and will likely continue to suffer severe economic, psychological, physical and emotional distress and is entitled to judgment as a matter of law pursuant to R.C. § 4112, et seq.

108. The actions and/or inactions of Defendants, jointly and severally, show a conscious disregard for the rights and/or safety of Plaintiff and had and/or has a great probability of causing, and did cause, substantial damages to Ms. Kessinger, thereby rendering Defendants liable for punitive damages, jointly and severally.

109. As a direct and proximate result of the actions and/or inactions of Defendants, jointly and severally, Ms. Kessinger has been damaged in an amount in excess of Seventy-Five Thousand Dollars and 00/100ths ($75,000.00).

110. Plaintiff also seeks punitive damages against Defendants, jointly and severally, to the extent permitted by law.

**D.     Fourth Claim – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY/ CONSTRUCTIVE DISCHARGE**

111. The preceding paragraphs are incorporated by reference as if fully restated herein

112. There exists a clear public policy manifested in the Ohio Revised Code, including, but not limited to, R. C. Chapter 4112 prohibiting discrimination on the basis of gender, and/or age, including harassment, and prohibiting retaliation for complaining of Defendants actions and/or inactions.

113. Plaintiff states that she fulfilled all of her obligations of her employment with Defendants, and has performed her duties with skill and proficiency, and has acted at all times in accord with Defendants' policies.

114. Defendants actions, inactions, and/or retaliatory actions jeopardize one or all of the clear public policies described in the preceding paragraph and, further, were motivated by a desire to abrogate one or all of these clear public policies.

115. Plaintiff is entitled to recover against Defendants in tort as provided by the Ohio Supreme Court in *Kulch* v. *Structural Fibers* (1997), 78 Ohio St. 3d 134.

116. Defendants lack an overriding business justification for its treatment of Plaintiff.

117. Plaintiff further states that the Defendants have unjustifiably and without good cause terminated Plaintiff's employment in violation Defendants' own company policy and the public policy of the State of Ohio has a strong public policy against discrimination in the workplace.

118. The actions and/or inactions of Defendants, jointly and severally, constitute wrongful termination and/or a constructive discharge of Plaintiff's employment.

119. As a direct and proximate result of the actions and/or inactions of Defendants, jointly and severally, Plaintiff was constructively terminated and/or was forced to resign from her employment as Defendants' discriminatory practices and promotion of a hostile work environment resulted in difficult and unpleasant working conditions that a reasonably cautious person under the same or similar circumstances would feel compelled to resign.

120. As a direct and proximate result of the actions and/or inactions of Defendants, jointly and severally, Ms. Kessinger has been damaged in an amount in excess of Seventy-Five Thousand Dollars and 00/100ths ($75,000.00), which damages continue to accrue, for any and all emotional distress, loss of reputation, humiliation, embarrassment, loss of self-esteem, loss of employment, extreme frustration, sums of Back and Front Pay, and Compensatory and Punitive Damages, plus an award of reasonable attorneys' fees.

121. The actions and/or inactions of Defendants, jointly and severally, as herein alleged constituted a conscientious disregard for the rights and/or safety of Plaintiff that had a great probability of causing, and did cause, substantial damage to her, thereby rendering Defendants liable for punitive damages, jointly and severally.

122. Each and every one of the actions and/or inactions of Defendants, jointly and severally, as complained of herein was/were intentional, motivated by malice and ill will and/or done with reckless disregard of Mrs. Kessinger's rights, thereby entitling her to recover punitive damages.

123. Plaintiff also seeks punitive damages against Defendants, jointly and severally, to the extent permitted by law.

**E.      Fifth Claim – Ohio Public Policy Tort**

124.    The preceding paragraphs are incorporated by reference as if fully restated herein.

125.    The actions and/or inactions of Defendants, jointly and severally, against Ms. Kessinger are retaliatory, motivated in part by Ms. Kessinger's gender, and her complaints of sexual harassment and discrimination. Further, Ms. Kessinger has essentially been constructively discharged from her employment and/or unjustly discriminated against.

126.    There exists a clear public policy manifested in the Ohio Revised Case, including, but not limited to, R. C. Chapter 4112 prohibiting discrimination on the basis of gender, including sexual harassment, and prohibiting retaliation for complaining of discrimination and reporting harassment and discrimination.

127.    The public Policy of the United States of America and the State of Ohio clearly prohibits discrimination on the basis of sex and race.  See Ohio Revised Code § 4112.02(A); Ohio Administrative Code § 4112-5-05(J)(1)(c).

128.    The constructive termination of Plaintiff's employment violates the clear public policy of the United States of America and the State of Ohio, as expressed by and through the Constitutions, Statutes, Regulations, Ordinances and Common Law United States of America and the State of Ohio, as expressed by and through the Constitutions, Statutes, Regulations, Ordinances and Common Law of the United States of America and the State of Ohio.

129.    Defendants' actions, inactions, and/or retaliatory actions jeopardize one or all of the clear public policies described in the preceding paragraph and, further, were motivated by a desire to abrogate one or all of these clear public policies.

130.    Ms. Kessinger is entitled to recover against Defendants in tort as provided by the Ohio Supreme Court in *Kulch v. Structural Fibers* (1997), 78 Ohio St. 3d 134.

131.    Defendants lack an overriding legitimate business justification for its treatment of Ms. Kessinger.

132.    As direct and proximate result of Defendants' tortuous actions, and the actions and/or inactions of Defendants, jointly and severally, Ms. Kessinger has been embarrassed and humiliated, and Ms. Kessinger has and continues to suffer loss of substantial earnings.

133.    The actions and/or inactions of Defendants, jointly and severally, were in reckless disregard of Mrs. Kessinger rights and/or motivated by malice and ill will, thereby entitling Mrs. Kessinger to recover punitive damages.

134.    As a direct and proximate result of the actions and/or inactions of Defendants, jointly and severally, Ms. Kessinger has been damaged in an amount in excess of Seventy-Five Thousand Dollars and 00/100ths ($75,000.00), which damages continue to accrue, for any and all emotional distress, loss of reputation, loss of employment, humiliation, embarrassment, loss of self-esteem,

extreme frustration, sums of Back and Front Pay, and Compensatory and Punitive Damages, plus an award of reasonable attorneys' fees.

135. Each and every one of Defendants' discriminatory actions and omissions complained of herein was intentional, motivated by malice and ill will and/or done with reckless disregard of Mrs. Kessinger's rights, thereby entitling her to recover punitive damages.

136. Plaintiff also seeks punitive damages against Defendants, jointly and severally, to the extent permitted by law.

**F.    Sixth Claim – Hostile Work Environment**

137. The preceding paragraphs are incorporated by reference as if fully restated herein.

138. As set forth *supra,* pursuant to federal law, Mrs. Kessinger belongs to a protected group as a female (gender).

139. As set forth more fully above, Mrs. Kessinger has been subjected to retaliation, discrimination, and unwelcome sexual harassment, including but not limited to, sexual advances and/or requests for sexual favors, and other conduct of a sexual nature.

140. Upon information and belief, the retaliation, discrimination, and harassment were based on Plaintiff's gender.

141. As set forth more fully above, the actions and/or inactions of Defendants, jointly and severally, coupled with the unwelcome, harassing, retaliatory and/or discriminatory conduct was severe and/or pervasive and created a hostile, offensive work environment for Mrs. Kessinger based on Mrs. Kessinger gender (female) and/or unreasonably interfered with her employment.

142. As set forth more fully above, Defendants' ratified the conduct of its employees, agents and/or authorized representatives by the actions and/or inactions of Defendants, jointly and severally.

143. By reason of the foregoing actions and/or inactions of Defendants, jointly and severally, Mrs. Kessinger has suffered damages in an amount exceeding Seventy-Five Thousand Dollars and 00/100ths ($75,000.00), which damages continue to accrue for any and all emotional distress, loss of reputation, loss of employment, humiliation, embarrassment, loss of self-esteem, extreme frustration, sums of Back and Front Pay, and Compensatory and Punitive Damages, plus an award of reasonable attorneys' fees

144. Each and every one of the actions and/or inactions of Defendants, jointly and severally, as complained of herein, was intentional, motivated by malice and ill will and/or done with reckless disregard of Mrs. Kessinger's rights, thereby entitling her to recover punitive damages.

145. Plaintiff also seeks punitive damages against Defendants, jointly and severally, to the extent permitted by law.

### G. Seventh Claim – Sexual Harassment

146. The preceding paragraphs are incorporated by reference as if fully restated herein.

147. As set forth *supra,* Mrs. Kessinger belongs to a protected class.

148. As set forth more fully above, Mrs. Kessinger has been subjected to unwelcome sexual harassment and Defendants have caused, ratified, and/or facilitated said behavior.

149. Upon information and belief, the harassment was based on her sex.

150. As set forth more fully above, Defendants' ratified the conduct of its employees, agents and/or authorized representatives.

151. Defendants' conduct violates R.C. Chapter 4112.

152. Mrs. Kessinger notified Defendants of the sexual harassment and followed the appropriate "chain of command".

153. As a result of the aforementioned harassment, coupled with the actions and/or inactions of Defendants, jointly and severally, Defendants created a hostile work environment and Plaintiff's work performance was unreasonably and irreparably interfered with.

154. As set forth more fully above, Defendants knew of the charged sexual harassment.

155. Defendants failed to implement prompt and appropriate corrective action, despite their knowledge, actual or constructive, of the charged sexual harassment.

156. By reason of the foregoing actions and/or inactions of Defendants, jointly and severally, Ms. Kessinger has suffered damages in an amount exceeding Seventy-Five Thousand Dollars and 00/100ths ($75,000.00), which damages continue to accrue for any and all emotional distress, loss of reputation, loss of employment, humiliation, embarrassment, loss of self-esteem, extreme frustration, sums of Back and Front Pay, and Compensatory and Punitive Damages, plus reasonable attorneys' fees.

157. Each and every one of the actions and/or inactions of Defendants, jointly and severally, as complained of herein, was intentional, motivated by malice and ill will and/or done with reckless disregard of Mrs. Kessinger's rights, thereby entitling her to recover punitive damages.

158. Plaintiff also seeks punitive damages against Defendants, jointly and severally, to the extent permitted by law.

### H. Eighth Claim – FAMILY AND MEDICAL LEAVE ACT VIOLATIONS

159. The preceding paragraphs are incorporated by reference as if fully restated herein.

160. Defendant RCSD is a public agency and therefore the FMLA applies.

161. Under Section 105 of the FMLA and section 825.220 of the FMLA regulations, an employer is prohibited from, among other things, interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right. In addition, an employer is prohibited from using an employee's request for or use of FMLA as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions.

162. As set forth throughout this Complaint, Defendants engaged in discrimination against Ms. Kessinger, by retaliating against her, by subjecting her to baseless disciplinary actions, improperly requesting personal health information, improperly communicating to third parties Ms. Kessinger's protected health information, and/or otherwise engaging in hostile actions toward Ms. Kessinger in violation of the FMLA.

163. As a direct and proximate result of the actions and/or inactions of Defendants, jointly and severally, including, but not limited to those acts or omissions with respect to Ms. Kessinger's rights under the FMLA, Ms. Kessinger suffered damages, including, not limited to severe emotional distress, invasion of privacy, and loss of income and benefits which the FMLA is designed to protect against.

164. By reason of the foregoing actions and/or inactions of Defendants, jointly and severally, Ms. Kessinger has suffered damages in an amount exceeding Seventy-Five Thousand Dollars and 00/100ths ($75,000.00), which damages continue to accrue for any and all emotional distress, loss of reputation, loss of employment, humiliation, embarrassment, loss of self-esteem, extreme frustration, sums of Back and Front Pay, and Compensatory and Punitive Damages, plus reasonable attorneys' fees.

165. Each and every one of the actions and/or inactions of Defendants, jointly and severally, as complained of herein, was intentional, motivated by malice and ill will and/or done with reckless disregard of Ms. Kessinger's rights, thereby entitling her to recover punitive damages.

166. Plaintiff also seeks punitive damages against Defendants, jointly and severally, to the extent permitted by law.

**V.**     **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1. For actual, compensatory and consequential damages in excess of Seventy-Five Thousand Dollars and 00/100 ($75,000.00);

2. For punitive damages as a result of the wrongful acts complained of herein in excess of Seventy-Five Thousand Dollars and 00/100 ($75,000.00);

3. That this Court issue an Order restraining and enjoining Defendants from continuing their unlawful employment practices;

4. For reasonable attorney's fees in an amount to be determined; and

5. For costs and other such relief, in law or equity, as this Court deems just and proper, including but not limited to pre-judgment and post judgment interest.

Respectfully submitted,

/s/ Brian K. Duncan
Brian K. Duncan, Esq. (0080751)
**BKD LEGAL LLC**
119 East Granville Street
Sunbury, Ohio 43074
P: (740) 965-1347
F: (614) 386-0410
Email: bduncanlegal@gmail.com
*Lead Trial Counsel for Plaintiff*

/s/ Bryan D. Thomas
Bryan D. Thomas, Esq. (0084659)
***The Law Office of Bryan D. Thomas, LLC***
490 City Park Avenue
Columbus, Ohio 43215
P: (614) 593-6398
F: (614)569-5877
Email: bthomas@bryanthomaslaw.com
*Counsel for Plaintiff*

## JURY TRIAL DEMANDED

Plaintiff respectfully requests a jury trial on all triable issues.

/s/ Brian K. Duncan
Brian K. Duncan, Esq. (0080751)
*Lead Trial Counsel for Plaintiff*

## MILITARY ATTESTATION

Attorney Brian K. Duncan, being duly sworn, states that he is the attorney for *Plaintiff* and that the Defendants are not in the United States Military Service.

/s/ Brian K. Duncan
Brian K. Duncan (0080751)
*Lead Trial Counsel for Plaintiff*

## PLAINTIFF'S ATTESTATION/VERIFICATION

      I, Jennifer Kessinger, being duly sworn, states that I am the named *Plaintiff*; and that to the best of my knowledge the statements contained in the foregoing Complaint are true as I verily believe.

                                                *Jennifer Kessinger* 1/19/2021
                                                Jennifer Kessinger, Plaintiff